Michael J. Nader, SBN 200425
Michael.Nader@ogletree.com
Paul M. Smith, SBN 306644
paul.smith@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA 95814
Telephone: 916-840-3150
Facsimile: 916-840-3159

Attorneys for Defendant
LAKIN TIRE WEST, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELLISSA MARIE DELGADO, on behalf of herself and current and former aggrieved employees,<br><br>Plaintiff,<br><br>vs.<br><br>LAKIN TIRE WEST, LLC, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT LAKIN TIRE WEST, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Cover Sheet, Certification of Interested Parties and Disclosure Statement; Declaration of Ray Grothaus in Support of Removal]<br><br>LA County Case No. 24STCV14080<br>Action Filed: June 6, 2024<br>Trial Date: |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF MELLISSA MARIE DELGADO AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant LAKIN TIRE WEST, LLC ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles Case No. 24STCV14080 to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446(b), as this action arises under federal law.

The Complaint asserts seven causes of action on behalf of Plaintiff Melissa Marie Delgado ("Plaintiff"), individually, and on behalf of a class of "current, former, and/or future employees of Defendants" (Complaint ¶ 2) during the period beginning four years prior to the filing of the Complaint to the present (June 6, 2020 to present – the "Relevant Time Period").

The Complaint seeks unpaid wages and penalties related to Defendant's alleged violations of the California Labor Code including, Defendant's purported failure to pay wages for all hours worked at minimum wage rate and the employees' overtime rate(s), failure to authorize and permit all legally required and/or legally compliant meal and rest breaks (including the payment of penalty premiums at the regular rate of pay), failure to timely pay earned wages at the separation of employment and related waiting time penalties, failure to provide complete and accurate wage statements, and restitution for violating California's Unfair Competition Law (Business & Professions Code § 17200, et seq.). (Compl. ¶ 1; Compl. *Passim.*).

At all times relevant to this action, Defendant was a party to three Collective Bargaining Agreements ("CBAs") that govern the employment of more than 90% of the "class" of workers on whose behalf Plaintiff purports to sue. Plaintiff's claims either exist solely as a result of the applicable CBA or are substantially dependent upon the interpretation of one or more CBAs that govern the terms and conditions of the employment of the vast majority of the class of workers Plaintiff purports to represent. Therefore, one or more claims are preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq., and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c) and the Court's exercise of supplemental jurisdiction over all other claims.

In support of this removal, Defendant states the following pursuant to 28 U.S.C. § 1446(a):

## I.    <u>BACKGROUND AND SUMMARY OF PLEADINGS</u>

1.    Plaintiff MELLISSA MARIE DELGADO (hereinafter "Plaintiff") is a former employee of Defendant.   (Complaint ¶ 3; Declaration of Ray Grothaus in Support of Defendant's Notice of Removal ("Grothaus Decl."), ¶ 5.)

2.    Plaintiff's Complaint purports to represent Defendants hourly-paid non-exempt employees, more than 90% of whom are represented by unions and whose terms of employment are governed by various collective bargaining agreements between Defendants and the union. (Grothaus Decl. ¶¶ 6-8, Exh. 1 & 2).

3.    On or around June 6, 2024, Plaintiff commenced the above-entitled action in the Superior Court of California, County of Los Angeles, Case No. 24STCV14080. True and correct copies of the Complaint, Summons, Civil Case Cover Sheet, Notice of Case Assignment, Notice of Case Management Conference and ADR Info Package are attached hereto as Exhibits A, B, C, and D, respectively.

4.    On August 20, 2024, Defendant filed a Notice of Appearance. A true and correct copy of the Notice of Appearance is attached as Exhibit E.

5.    Plaintiff's Complaint seeks to recover allegedly unpaid wages and penalties for alleged violations of the California Labor Code on behalf of herself and other similarly situated individuals who are currently, were formerly, or will be in the future employed by Defendant as hourly non-exempt employees in California during the Relevant Time Period.

6.    Plaintiff's Complaint implicates federal law because the terms and conditions of employment of the vast majority of the workers she seeks to represent are dependent upon the terms of multiple collective bargaining agreements ("CBAs") entered into between Defendant and the Union. (Grothaus Decl. ¶¶ 6-8.)

7.    Plaintiff's Complaint omits the fact that Defendant's workers' employment is governed by the terms of the CBAs.

8.    A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of Los Angeles.  Exhibits A-E

contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action.

## II.    BASIS FOR REMOVAL

9.    This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1446(b), in that it is a civil action that presents a federal question.

### A.    This Court has jurisdiction over federal questions.

10.    Plaintiff's Complaint purports to represent employees covered by CBAs entered into between Defendant and the Union. Plaintiff's action, thus, is based upon or preempted by federal law, specifically Section 301 of the Labor Management Relations Act ("LMRA") ("Section 301"). 29 U.S.C. § 185.

11.    Pursuant to Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. S. Cal. Gas., Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

12.    Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *see also Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1016 (9th Cir. 2000) (Section 301 "has been broadly construed to cover most state-law actions that require interpretation of labor agreements").

13.    "The preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987); *see also Allis-*

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (if preempted, the "claim must either be treated as a § 301 claim (citations) or dismissed as pre-empted…").

14.    As articulated in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007) the Ninth Circuit applies a two-step test to determine if a claim is preempted. *See also, Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (reaffirming the two-step *Burnside* analysis).

15.    **Curtis Step One**. Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis*, 913 F.3d at 1152. Under *Curtis*, when an asserted Labor Code or Wage Order claim is covered by an available collective bargaining exemption – such that there exists no valid underlying state law claim – the inquiry is resolved at this first step in favor of preemption. ("By its terms, therefore, the default definition of overtime and overtime rates in Section 510 does not apply to an employee who is subject to a qualifying CBA." *Id.* at 1153-1154.)

16.    **Curtis Step Two**. If Step One is satisfied, Section 301 preemption applies and the analysis ends. If there is no preemption found at the first step, courts proceed to the second step of the analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153; *see also Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 599 (9th Cir. 1996) ("A claim pleaded under state law that requires the interpretation of a collective bargaining agreement is transformed by Ssection 301 of the LMRA into a claim arising under federal law.").

17.    Under this second step, where there is no applicable collective bargaining agreement exemption, preemption still applies if the resolution of a plaintiff's claim requires interpretation of the terms of the collective bargaining agreement. *See Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1016 (C.D. Cal. Sep. 2, 2022) ("*Mellon*") (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was

compensated for time spent undergoing security checks"); *see also Giles v. Canus Corporation*, 2022 WL 3370793 at *6 (N.D. Cal. Aug. 16, 2022) (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"). Any underlying alleged Labor Code violations that are not preempted under Curtis Step One would be preempted under Curtis Step Two due to necessary interpretation of the CBA.[1]

18.     Preemption also applies where, as here, other impacted employees—but not plaintiff—are subject to a CBA. For example, this Court in *Braswell v. AHMC San Gabriel Valley Medical Center LP*, the Court explained that plaintiff's PAGA claim for allegedly unpaid overtime wages under Labor Code 510 was preempted under Section 301 even though Plaintiff was not a member of the union because Plaintiff sought to represent the interests of others who were members of the union. 2022 WL 707206, at *4 (C.D. Cal. March 8, 2022).  ((plaintiff's PAGA claims preempted where named plaintiff not subject to CBA but has filed suit on behalf of employees covered by a CBA). *In Rodriguez v. USF Reddaway Inc.*, the Eastern District concurred: "Even if a plaintiff is not a party to the CBA, courts must still interpret the CBA to determine whether a violation occurred as to the [other] employees.").

19.     As the Ninth Circuit explained many years ago, "[i]t is the *relationship of the claim to the CBA*, regardless of the plaintiff's employment status, that guides the preemption analysis." (emphasis added). *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561 (9th Cir. 1991). Therefore, because Plaintiff's claims on behalf of the class of persons she seeks to represent cannot be resolved without resort to the CBAs, those claims give this Court jurisdiction to resolve the matter even though Plaintiff herself was not a member of the Union.

---

[1] At all relevant times alleged in the Complaint, Defendant has been, and is, a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the National Labor Relations Act ("NLRA") and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a).

**B.**    <u>Plaintiff's Complaint is brought on behalf of union employees.</u>

20.    Plaintiff asserts claims on behalf of Defendant's hourly non-exempt employees in California during the Relevant Time Period. (Compl. ¶ 1).

21.    The vast majority of Defendant's California hourly employees are subject to CBAs. (Grothaus Decl. ¶¶ 6-8)

22.    Two CBAs cover all production and maintenance and transportation employees with the Defendant at Defendant's location in Santa Fe Springs, California. (Grothaus Decl. ¶ 8, Exhs. 1[2] & 2,[3] Art. I). The CBAs are between Defendant and the Plastic Workers' Union Local Number 18, AFL – CIO (the "Union").[4]

23.    A third CBA between the Defendant and the Union covers all production and maintenance and transportation employees of the Defendant at Defendant's location in Livermore, California. (Grothaus Decl. ¶ 8, Exh. 3,[5] Art. I).

24.    The Union is a labor organization which exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work, discipline, and discharge. Thus, Plaintiff necessarily seeks to assert her claims on behalf of employees covered by CBAs.

25.    Plaintiff asserts claims in the Complaint that either exist solely as a result of the applicable CBA or are substantially dependent upon the interpretation of a CBA that governs the terms and conditions of the employment of the class of workers Plaintiff purports to represent.

**C.**    <u>Plaintiff's second claim for unpaid overtime wages is preempted under *Curtis* Step One.</u>

26.    In the Complaint, Plaintiff alleges generally that Defendant failed to pay the Plaintiff and the class of workers Plaintiff purports to represent, all overtime wages

---

[2] Covering the time period February 1, 2020 to January 31, 2023.
[3] Covering the time period February 1, 2023 to January 31, 2026.
[4] At all relevant times, the Union has been, and is, a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).
[5] Covering the time period February 1, 2023 to January 31, 2026.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1    for all overtime hours worked due to Defendant's policies, practices and/or

2    procedures. (Compl. ¶¶ 22-23).

3        27.    The CBA includes the following language: "For the purpose of

4    computing overtime, paid holidays will count as time worked." (Grothaus Decl. ¶ 8,

5    Exh. 2,[6] Art. V, § 2).

6        28.    California law does not require overtime arising from holiday time. *See*

7    *Advanced-Tech Sec. Servs., Inc. v. Superior Ct.*, 163 Cal. App. 4th 700, 706 (2008)

8    ("There is nothing in Section 510 to suggest that the Legislature intended to deem

9    premium holiday pay, voluntarily offered by the employer, as regular pay…. [T]he

10    legislative history of Section 510 demonstrates no intent to consider [holiday pay] as

11    part of an employee's regular rate of pay. In addition, relevant federal legislation and

12    case law are decidedly to the contrary.").

13        29.    When a CBA nevertheless offers overtime arising from holiday time,

14    California overtime law is preempted by the LMRA because the contract's rules apply

15    – not Labor Code Section 510. *See Avila v. Kiewit Corp.*, 2021 WL 4732575, at \*2

16    (C.D. Cal. June 17, 2021) ("Section 510 is also inapplicable when there is 'an

17    alternative workweek schedule adopted pursuant to a [CBA].' Cal. Lab. Code §

18    510(a)(2); Cal. Code Regs. tit. 8, § 11160(3)(H)(1).") Thus, Plaintiff's overtime-pay

19    and related derivative claims arise only under the CBA, not under California state law,

20    and are preempted by the LMRA.

21        **D.    <u>In the alternative, Plaintiff's second claim for unpaid overtime</u>**

22        **<u>wages is preempted under *Curtis* Step Two.</u>**

23        30.    If Plaintiff's right to overtime pay is not "a right existing 'solely' from"

24    the CBA, Section 301 preemption nevertheless applies because the right "is

25    substantially dependent on analysis of [the CBA]," (*Curtis, supra,* 953 F.3d at 1153).

26

27

28    ---

[6] Because the CBAs apply the same language throughout, Defendant refers only to Exhibit 2 – the Santa Fe Springs CBA in effect during Plaintiff's employment – for all purposes of this removal.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

31.    To determine the meaning of overtime pay under the CBA, the Court will need to consider the meaning of terms "paid holidays" and "time worked," and the phrase "hours worked on a holiday," including how to apply these terms in conjunction with the mandate that such hours count double "for purposes of computing overtime." (Grothaus Decl. ¶ 8, Exh. 2, Art. V).

32.    Caselaw is clear that when a CBA offers overtime arising from holiday time, which otherwise would not exist under California law, California overtime law is preempted by the LMRA because substantial interpretation of the contract is required to determine when, how, and at what rates overtime is required. *See Avila v. Kiewit Corp.*, 2021 WL 4732575, at *2 (C.D. Cal. June 17, 2021) ("Section 510 is also inapplicable when there is 'an alternative workweek schedule adopted pursuant to a [CBA].' Cal. Lab. Code § 510(a)(2); Cal. Code Regs. tit. 8, § 11160(3)(H)(1).") Thus, Plaintiff's overtime-pay and related derivative claims arise only under the CBA, not under California state law, and are preempted by the LMRA.

### E.    Plaintiff's first claim for unpaid minimum wages is preempted under *Curtis* Step Two.

33.    Section 301 preempts Plaintiff's claim for unpaid minimum wages because to resolve that claim, the Court must evaluate the parties' agreement regarding the hours of work, hourly rates, workdays, and other factors related to time worked and pay outlined in the CBA. *Giles*, *supra*, 2022 WL 3370793 at *6 (recognizing that resolution of minimum wage claim will require 'interpretation' of contract terms concerning security check time).

34.    Plaintiff's claim for unpaid minimum wages hinges on the allegation that Defendant failed to pay Plaintiff and the class of workers Plaintiff purports to represent "for all hours worked." (Compl. ¶ 1). However, the CBA defines and dictates the terms and conditions of the work of Defendant's workers, including their time worked, call-in pay, paid rest breaks, wage rates and wage increases, and shift differentials.

(Grothaus Dec. ¶ 8, Exh. 2, Art. V, §§ 4-5; Art. XVI, §§ 1-3). Thus, the minimum wage claim turns on interpretation of the CBAs' terms.

35.    To begin, the Court must first interpret several terms in the CBA concerning call-in pay to resolve the minimum wage claim. For example, what is the meaning of an employee who is "scheduled or notified" to report to work? What is the meaning of "does report to work" under the CBA (and how does it differ from California law)? What factors are considered to determine whether work is "not available" under the CBA? Do the same exceptions under California law apply? What is the meaning of when an event is clearly beyond the control of the employer? Do Acts of God apply, such as under the Wage Order, or something else? All of these terms and phrases from the CBAs must be interpreted in order to ascertain whether minimum wages were paid "for all hours worked." (Comp. ¶ 1).

36.    Additionally, the Court must also consider various undefined terms presented in the rest period provision of the CBA, including the term "wash-up period." What qualifies as the "wash-up" period" under the CBA? How is it paid? What is the end of the workday under the CBA? Is the 5-minute period in addition to an 8-hour workday? Is it paid at a base hourly rate or an overtime rate under the CBA? Perhaps a lower rate of pay? Can the wash-up period extend beyond five minutes? And can an employee be paid less if it ends sooner? How is the time to be recorded and paid? None of these questions are answered by the plain language of the CBA. All that we know is it paid time worked.

37.    Plaintiff must also demonstrate how the alleged off-the-clock work caused the hourly wages paid to herself and the class of workers she purports to represent to fall below the mandated minimum wage. *See Barajas v. Blue Diamond Growers, Inc.*, 2023 WL 2333548, at *12-13 (E.D. Cal. Mar. 2, 2023) (holding that to survive a motion to dismiss a plaintiff must allege factual information regarding the hourly wages paid and how alleged off-the-clock tasks caused the hourly wage to fall below the mandated minimum wage).

38.     To adjudicate this claim, the Court will need to substantially interpret the many provisions in the CBA pertaining to wage rates, wage increases, qualifications for wage increases, and qualifications for shift differentials. For example, what is the meaning of "market conditions" in Article XVI Section 1, or a "negotiated union increase," or what constitutes eligibility "for the difference between the subsequent Union increase and the already received pay increase" under the CBA? (Grothaus Decl. ¶ 8, Exh. 2, Art. XVI). What does it mean that the Company must make "every effort" to promote only employees on the active payroll to certain classifications and related wage rates? What is the meaning of the specific standards of "quality, quantity, and attitude" under the CBA that would qualify employees for certain wage rates and increases? What is the meaning of a worker "successfully completing grader training" under the CBA that would qualify them for a particular wage rate? (*Id.*) All of these terms and phrases will require interpretation under the CBA to adjudicate Plaintiff's minimum wage claim. Interpretation of these provisions and their terms will be required to determine whether any compensation was owed for these scenarios, which cover "all hours worked" under the contracts and thus, cover the allegations asserted in the Complaint.

39.     Finally, the past practices of the parties must also be considered in interpreting these terms. *See Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1046 (9th Cir. 2016) ("under longstanding labor law principles ... the practices of the industry and the shop ... [are] equally a part of the collective bargaining agreement although not expressed in it") (quoting *United Steelworks of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581-82 (1960)).

40.     Since the alleged minimum wage violations substantially depend on an analysis and interpretation of the CBA, they are preempted under Curtis Step Two. *See, e.g.*, *Mellon*, *supra*, 625 F. Supp. 3d at 1016 (resolution of minimum wage claim required "interpreting the CBA to determine whether [plaintiff] was compensated for time spent undergoing security checks"); *Rodriguez v. Gonsalves*, 2022 WL 161892,

at *5 (where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'''); *Giles*, *supra*, 2022 WL 3370793 at *5-6 (finding off-the-clock claim preempted under Section 301 where resolution would require interpretations of the terms "actual time worked" and "show-up pay").

41.    Here, the Court will need to consider the above terms and phrases used in the CBAs, without definition, to determine when and whether minimum wage is owed for all hours worked. In doing so, Plaintiff's minimum wage claim is preempted under Curtis Step Two.

**F.    Plaintiff's rest break claim is preempted under *Curtis* Step Two.**

42.    The CBA provides that each employee will be given a 10-minute rest period twice each day <u>and</u> that employees will also be allowed a five (5) minute wash-up period that is paid time. (Grothaus Decl. ¶ 8, Exh. 2, Art. V, § 5).

43.    Merely determining "the meaning of industry terms is a form of interpretation" of a CBA warranting preemption. *Marquez v. Toll Global Forwarding*, 804 F. App'x 679, 681 (9th Cir. 2020) (affirming dismissal of a rest-period claim under the second prong of Burnside because the claim required the court to interpret industry terms such as "permit," "load," "unattended," and "leave a load.").

44.    *In Gray v. Marathon Petroleum Logistics Servs., LLC,* No. CV 20-7865-JFW(JCX), 2021 WL 129144, at *5 (C.D. Cal. Jan. 12, 2021), the Court took the preemption analysis farther, finding that the plaintiff's rest period claim was preempted by Section 301 even though the CBA's language closely tracked the language of the Labor Code. There, the CBA provided that "[e]mployees are authorized and permitted to take a ten (10) minute Rest Period every four (4) consecutive hours of work or major fraction thereof" and that "Rest Periods should be taken as close to the middle of the four (4) hour increment as practicable, or scheduled by a supervisor." *Id*. Nevertheless, the Court concluded that:

resolution of Plaintiff's rest period claim will require interpretation of the CBA, including "what it means under the CBA to 'permit' an employee to take" a rest period, what it means for an employee to take a rest period "as practicable, or scheduled by a supervisor," and how [Defendant]'s scheduling and other policies prevented Plaintiff and other putative class members from taking rest periods. *Id.*

45.    Following the Court's reasoned analysis in *Gray*, Plaintiff's rest break claim in this case is preempted because adjudication will require interpretation of the CBA, including what it means under the CBA for employees to be "given" a 10 minute rest break. Does that mean it's a net 10 minutes of time in a place suitable for a break? Are more rest breaks provided if the workday is more than eight hours? If an employee does not get the additional wash up break, are they paid a premium wage? Are rest break premium wages paid if the employee does not get the wash-up break? If a rest break premium wage is in the payroll data, how would we know whether it was paid because the employee was prevented from a statutorily compliant rest break opportunity or prevented from a wash-up paid rest break provided by the CBA? Does the wash-up break include additional time to travel to a place where the wash-up can be completed? Is the wash-up time paid at the overtime rate because it is provided at the end of the shift? Clearly, a substantial interpretation of the CBA would be necessary to adjudicate the rest break claim.

### G.    The CBA's exclusive arbitration procedures require substantial interpretation for the Court to determine whether Plaintiff's claims can be pursued in Court, which further supports preemption under Curtis Step Two.

46.    The Union and the Defendant agreed to broad and exclusive grievance and arbitration procedures in the CBA. Specifically, the CBA provides the following: "**SECTION 1. DEFINITION**. For the purpose of this Agreement, a grievance is a difference of opinion with respect to the meaning and application of the terms and conditions of this Agreement. Grievances shall be taken up in the following manner:

…" (Grothaus Decl. ¶ 8, Exh. 2, Art. IX, § 1). Defendant submits that this language encompasses Plaintiff's wage claims, which necessarily requires the interpretation of the meaning and application of numerous terms in the CBA, including wash-up breaks, negotiated union pay increases, the required efforts by the Defendant to promote employees into different classifications and wage rates, the standards of quality, quantity, and attitude for certain qualifications for wage rates, when a worker successfully completes grader training, and other terms.

47.    The CBA also provides the following provision that clearly implicates that any disputes over wages would be resolved by the CBA because the Union always reserved the right to examine payroll records to determine compliance:

> The Union shall have the right to examine the payroll records of the Company to determine that there has been compliance with the terms contained in the Bargaining Agreement, which are concerned with the remittance or payment of Union Dues.
>
> The Union shall be required to give fourteen (14) days' notice of such an examination.
>
> The examination shall be conducted by a Certified Public Accountant who will be retained by the Union. None of the auditing costs involved shall be borne by the Employer. (*Id.* at Art. XV).

48.    *In Gay v. Pac. Steel Grp.*, 2021 WL 2917095, at * 3 (N.D. Cal. June 15, 2021), the court made clear that a dispute over a similarly broad grievance and arbitration procedure in a CBA further supports preemption:

> Plaintiffs argue that the CBA's grievance procedure is insufficient to establish that the CBA requires final and binding arbitration of disputes. *Id*. **Plaintiffs' argument is self-defeating, since they are asking the Court to consider the CBA's detailed grievance procedure and find that, as a matter of law, the procedure does not provide for final and binding arbitration of disputes. In other words, to adjudicate**

**Plaintiffs' argument, the Court will necessarily have to interpret the scope and validity of the CBA's grievance procedure provisions.**
The necessity of such an analysis satisfies the preemption test's standard of "an active dispute over 'the meaning of contract terms.'" *See Curtis*, 913 F.3d at 1153. It may be that Plaintiffs will prove to be correct in their arguments about the applicability of the CBA's grievance procedure and the operation of the statutory exemptions, but the Court clearly cannot conduct that analysis without resolving "questions about the scope, meaning, or application of the CBA." *Id*. ("[A] state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA."). Accordingly, the Court finds that the second prong of the § 301 preemption test is satisfied with respect to Plaintiffs' overtime, meal period, and rest period claims.

*Id.*. Thus, Plaintiff's right to pursue her claims in court, as opposed to arbitration, *cannot* be answered without interpreting the meaning of Article XV of the CBA, including whether it includes a clear and unmistakable waiver of a judicial forum for Plaintiff's claims (on behalf of the class of workers she purports to represent).

49. As a result, adjudication of Plaintiff's claims would supplant provisions of the CBA which were specifically negotiated to address the resolution of the same disputes alleged in the complaint. *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 845 (9th Cir. 2022) (affirming preemption of claims for failure to exhaust the grievance process where "the CBA explicitly contemplates a dispute resolution mechanism covering the exact conduct alleged as the basis of [plaintiff]'s current claims"); *Allis-Chalmers,* 471 U.S. at 219 ("The parties here have agreed that a neutral arbitrator will be responsible, in the first instance, for interpreting the meaning of their contract. Unless this suit is pre-empted, their federal right to decide who is to resolve contract disputes will be lost."); *Mellon,* 625 F. Supp. 3d at

1017–18 (C.D. Cal. 2022) (finding claims preempted where the CBA provided "exclusive" grievance procedures for the specific complained of conduct).

## H. This Court has supplemental jurisdiction over the remaining claims.

50. To the extent there are some claims alleged in the Complaint that do not raise federal questions (and/or are not preempted by Section 301 of the LMRA), such claims are removable under 28 U.S.C. § 1441(c) pursuant to exercise of this Court's supplemental jurisdiction under 28 U.S.C. § 1367. The court's exercise of supplemental jurisdiction is proper because the remaining claims relate to and emanate from the same employment relationship between Plaintiff and the class of workers she purports to represent, on the one hand, and Defendant on the other.

51. This Court has jurisdiction over such claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(a), because those remaining claims are so related to the federal claims as to form part of the same case or controversy under Article III of the U.S. Constitution, and they are substantially related to and rise out of the same nucleus of operative facts as Plaintiff's claims arising under the LMRA such that they should be tried in one action. *See Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966); *Nettles v. Paramedics Logistics Operating Co. LLC*, 2022 WL 137631, at * 2 (N.D. Cal. Jan. 14, 2022) (exercising supplemental jurisdiction over non-preempted labor code claims and denying motion to remand).

52. A court in the Central District recently concluded that, even if the only claim subject to complete preemption is a claim for violation of Labor Code § 204, the court should exercise supplemental jurisdiction over any and all claims alleging wage/hour violations because the claim is "intertwined with [the] section 204 claim.". *Ariola v. Raytheon CA Techs. Corp.*, 2023 WL 5764296, at *10 (C.D. Cal. Sept. 6,

16

2023). In doing so, the Court exercised supplemental jurisdiction over claims for violation of Labor Code §§ 201, 202, 226(a), 226.7, 510, 512(a), 1174(d), 1197, 1197, 1197.1, 1198, 2800 and 2802, as well as claims under Labor Code § 2698 et seq. (PAGA) and Business and Professions Code § 17200 et seq. for being "part of the same case or controversy." *Id*.

53.     The same analysis can apply here. Although Plaintiff does not assert a 204 claim, she does allege that Defendant failed to pay all workers all wages *at separation* under Labor Code Section 203. In doing so, Plaintiff alleges that Defendant failed to pay all wages owed during employment, which as discussed above, includes minimum wage and overtime payments and rest break premiums which require interpretation of the CBAs to be resolved. In other words, Plaintiff's 203 claim can only be resolved after interpreting the applicable CBA. This is true also of Plaintiff's other claims for wage statement violations and unfair competition – whether these claims exist requires interpretation of the CBAs and therefore exercise of the Court's supplemental jurisdiction is appropriate.

## III.    OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

### I.    Notice is Timely

54.     Pursuant to 28 U.S.C. § 1441, a defendant may remove an action to federal court if the court could exercise subject matter jurisdiction over the dispute.

55.     Pursuant to 28 U.S.C. § 1446(b), the defendant's notice of removal shall be filed within thirty days after (1) "the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based," or (2) "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable."

56.     The United States Supreme Court has repeatedly held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.") (emphasis added) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-113 (1936)).

57.     However, "[A] plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet*, 522 U.S. at 475 (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983)). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Rivet*, 522 U.S. at 475.

58.     The time to remove under 28 U.S.C. § 1446(b) does not begin to run until receipt, by the defendant, through service or otherwise, of the initial pleading or any subsequent pleading, motion, order, or other paper from which it may first be ascertained the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-691 (9th Cir. 2005) (*Harris*) (the deadline begins "only when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction.") Absent such information in the complaint, "the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, or other paper' from which it can be determined that the case is removable." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006).

59.     Following *Harris*, courts in the Ninth Circuit have consistently recognized that the first type of 30-day removal period is triggered only from information set forth in the four corners of the pleading, not through a defendant's potential or subjective knowledge of grounds for federal question jurisdiction, or what the defendant should or could know by investigating. *See, e.g., Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) (quoting *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) In other words, if the complaint is silent or indeterminate as to the grounds for removability, the removing party is not obligated to remove the case within 30 days of receipt of a complaint, even if the removing party already possesses records within its own files that support removal. *In Kuxhausen v BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013), the Ninth Circuit explained it thus: "Preferring a clear rule, and unwilling to embroil the courts in inquires 'into the subjective knowledge of [a] defendant,' we declined to hold that materials outside the complaint start the thirty-day clock."

60.     Pursuant to statute and the *Harris* rules, papers that existed before a complaint was filed cannot trigger the first type of 30-day removal period, including papers that existed and were already in the removing party's possession before a complaint was filed so long as the complaint does not disclose 'on its face' that the case is one which is removable. *See, e.g.*, *Rose v. Beverly Health & Rehab. Servs., Inc.*, 295 F. App'x 142, 144 (9th Cir. 2008) ("[The] complaint did not disclose on its face that [plaintiff's] suit was one [involving] a CBA. [Defendant's] subjective knowledge to the contrary is irrelevant."); *Carvalho v. Equifax Information* Services, *LLC,* 629 F.3d 876, 886 (9th Cir. 2010) ("It is axiomatic that a case cannot be removed before its inception. If the second paragraph of section 1446(b) were meant to include as 'other paper' a document received by the defendant months before receipt of the initial pleading, the requirement that the notice of removal 'be filed within thirty days after receipt by the defendant' of the 'other paper' would be nonsensical.")

61.     For these reasons, it does not matter that Defendant was a party to the CBAs and therefore possessed such information prior to the filing of the Complaint - Plaintiff did not raise the issue in the Complaint and therefore the removal clock never began. *Rossetto v. Oaktree Capital Management, LLC*, 664 F. Supp. 2d 1122,1128-1129 ("[T]he initial thirty-day removal period never began because Plaintiff's complaint did not indicate that Plaintiff was a member of a union, or that a CBA existed governing the payment of service charges. Although it is true . . . that Defendants had independent knowledge of these facts, the only relevant question is whether this information was included in the Complaint.")

62.     <u>State Court Within this Court's Jurisdiction</u>. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 84(c) and 1391 because the county in which the State Court Action was pending (Los Angeles – Central District) is found within this District.

63.     <u>Consent to Removal</u>. Defendant is not aware of any other defendants having been served with a copy of Plaintiff's Complaint, and the requirements of 28 U.S.C. § 1446(b)(2)(A) are met.

64.     <u>State Court Pleading Attached</u>. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant are attached hereto as the following exhibits, including Plaintiff's Complaint (Exhibit A); Summons of Plaintiff's Complaint (Exhibit B); Civil Case Cover Sheet (Exhibit C); and Notice of Case Assignment and Hearing (Exhibit D). A copy of Defendant's Answer is also attached. (Exhibit E)

65.     <u>Filing and Service of Notice of Removal</u>. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.

## IV.    <u>RESERVATION OF RIGHTS</u>

66.     This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to defenses and objections to venue, improper service,

and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

67.     WHEREFORE, Defendant requests that the above action pending before the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

DATED:  December 9, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Paul M. Smith
       Michael J. Nader
       Paul M. Smith

Attorneys for Defendant
LAKIN TIRE WEST, LLC

# EXHIBIT A